**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| BEAUFORT COUNTY SCHOOL DISTRICT, )<br>      Plaintiff, )<br>  v. )<br>)<br>UNITED NATIONAL INSURANCE COMPANY, )<br>THE SOUTH CAROLINA SCHOOL BOARDS )<br>INSURANCE TRUST, and THE SOUTH )<br>CAROLINA SCHOOL BOARDS INSURANCE )<br>TRUST - PROPERTY/CASUALTY TRUST )<br>FUND, )<br>      Defendants. )<br>_____)  | C.A. No.: 9:07-CV-1862-PMD<br><br>**ORDER** |

   This matter is before the court on Plaintiff's Motion to Remand pursuant to 28 U.S.C. § 1447(c). Plaintiff claims that the matter must be remanded to state court because no federal jurisdiction exists. The complaint asserts no federal issue of law and Plaintiff asserts complete diversity of citizenship is lacking because Plaintiff and Defendant The South Carolina School Boards Insurance Trust ("SCSBIT") are both citizens of South Carolina. Defendant United National Insurance Company ("United") contends that removal was proper because SCSBIT: (1) was fraudulently joined, (2) is merely a nominal party, and (3) should be rejoined as a plaintiff in the case. Plaintiff denies all of these assertions, and also contends that diversity of citizenship is lacking because Plaintiff is an arm of the state, and thus not a citizen of any jurisdiction for diversity purposes. Furthermore, Plaintiff asserts that United's removal of the case was completely unsupported by legal grounds, and thus seeks the award of attorneys' fees and costs. For the reasons set forth herein, Plaintiff's motion for remand and request for attorneys' fees and costs are both granted.

**BACKGROUND**

In August of 1991, Plaintiff joined with a number of other South Carolina school districts to form and participate in SCSBIT. (Def.'s Ex. 7.) SCSBIT was formed as a way for numerous school districts to pool their capital and resources in obtaining insurance coverage, presumably on more favorable terms than they would have negotiated separately.

SCSBIT obtained insurance for all its member school districts, including Plaintiff, from the period beginning on July 1, 2003, and ending on July 1, 2004, from United. (Def.'s Ex. 2). The terms of the insurance policy ("the policy") between SCSBIT and United provide that United will only cover losses in excess of $150,000, which means that the policy has a $150,000 "self-insured retention." *Id*. at 3. This self-insured retention functions much in the same manner as a deductible in common health insurance policies. For any amount up to $150,000, United would provide no coverage, and for any loss of over $150,000, SCSBIT would be responsible for paying $150,000 and United would satisfy the remainder of the claim. The policy also had a specific limitation on claims for sexual abuse, however, which specified a maximum coverage of $500,000. *Id*. at 58.

In April and May of 2004, seven students filed two separate lawsuits against Beaufort County School District ("Plaintiff") alleging sexual molestation by an elementary school music teacher, Phillip Underwood-Sheppard. Plaintiff reached settlement agreements with all the students totaling $4,750,000.00. According to Plaintiff, United and SCSBIT were kept fully informed throughout the settlement negotiations. (Pl.'s Mot. to Remand at 2.)

The principal substantive issue in this case is whether the settlements comprise one single claim or seven different claims. Plaintiff believes they constitute seven distinct claims, and thus SCSBIT should pay $1,050,000 (the self-insured retention amount of $150,000 for each of the seven claims), and United should pay $3.5 million (the $500,000 maximum payment for sexual abuse

claims for each of the seven claims). *Id*. at 2-3. This would add up to $4.55 million dollars in insurance coverage, and would leave Plaintiff with $200,000 of the payment to pay out of its own funds. SCSBIT and United, however, contend that this constitutes a single claim, and that SCSBIT should only be responsible for paying the $150,000 self-insured retention amount on a single claim, and United should only be responsible for paying $500,000 on a single claim. This would add up to $650,000 worth of insurance coverage, leaving Plaintiff responsible for $4.1 million of the settlement amount.

On June 5, 2007, Plaintiff brought suit against Defendants in the Court of Common Pleas for Beaufort County, South Carolina, alleging breach of contract and bad faith, and seeking both compensatory damages and a declaratory judgment. Defendant United is incorporated in and has its principal place of business in Pennsylvania. Defendant SCSBIT was organized in and operates exclusively in South Carolina. On July 5, Defendants filed a Notice of Removal, on the grounds that: (1) Defendant SCSBIT had been fraudulently joined to defeat diversity jurisdiction; (2) Defendant SCSBIT is merely a nominal party, and is not necessary or indispensable to the action; and (3) Defendant SCSBIT should actually be a plaintiff in this case, and thus if the court properly realigns the parties by interest, there is no diversity. (Def.'s Notice of Removal at 2-3.)

On July 24, 2007, Plaintiff moved to remand this action back to the Court of Common Pleas pursuant to 28 U.S.C. § 1447(c), contesting all three of Defendants' grounds for removal and arguing in the alternative that Plaintiff is an arm of the state, and thus is not a citizen of any jurisdiction for diversity purposes. (Pl.'s Mot. to Remand at 7.) Plaintiff also asserts that Defendants' removal to federal court was completely without merit, and thus Defendants should be liable for Plaintiff's attorneys' fees and costs imposed by the removal. *Id*. at 8. On August 27, Defendants filed a Response to Plaintiff's Motion to Remand. Plaintiff filed a Reply to the

Response on August 29.[1]

## DISCUSSION

**I.     Motion for Remand**

   *A.     Fraudulent Joinder*

"To show fraudulent joinder, the removing party must demonstrate either (1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks omitted). "The party alleging fraudulent joinder bears a heavy burden -- it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* The plaintiff need not establish that he will ultimately succeed on his claims; "[t]here need be only a slight possibility of a right to relief." *Id.* at 425. In order to determine whether a pleading is fraudulent, the Court is not bound by the allegations of the pleadings, but instead it may consider the entire record and may resolve the issue by any means available. *AIDS Counseling & Testing Centers v. Group W Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir. 1990).

United claims that SCSBIT was fraudulently joined by Plaintiff in order to improperly defeat diversity jurisdiction so that the claim could be brought in state court. (Def.'s Response at 6-9.)

---

[1] On September 6, United filed a motion to strike Plaintiff's Reply because the court had not specifically given the Plaintiff's leave to file a reply to United's Response. Local Rule 7.07 explicitly provides that "a party desiring to reply to matters raised initially in a response to a motion or in accompanying supporting documents shall file the reply within (5) days after service of the response . . . ." Plaintiff's Reply was filed in a timely matter. Accordingly, the court denies United's motion to strike the Reply.

United bases this claim in part on the fact that only one out of the five Counts in the original Complaint were brought against SCSBIT, alleging breach of contract for breaching an "unidentified agreement." (Compl. Count 4 at ¶ 37.) United asserts that Plaintiff has not produced a contract that has any provisions giving rise to a cause of action against SCSBIT. (Def.'s Response at 7.) United also asserts that joinder was fraudulent because the Plaintiff has not shown that SCSBIT will refuse to pay the self-insured retention amount on all seven claims if Plaintiff obtains a declaratory judgment against United. *Id*. at 7-8.

Plaintiff has more than satisfied the pleading standard, among the most liberal in all of the law, for showing that the joinder of SCSBIT was not fraudulent. Plaintiff has not only alleged the existence of an agreement with SCSBIT to cover the self-insured retention amount on insurance claims, SCSBIT has admitted that it has an agreement to pay that amount on claims, and that it has already paid Plaintiff the self-insured retention amount on a single claim in the present case. There can therefore be no doubt that Plaintiff and SCSBIT have an agreement in place under which SCSBIT has agreed to compensate Plaintiff for insurance claims of this type. The main issue in dispute between the parties is not whether there is such an obligation, but the extent of such an obligation, which is an issue properly preserved for litigation itself, not a determination of jurisdiction. *See Hartley*, 187 F.3d at 425 ("[A] jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact."). The court can find no evidence in the record, however, that lead it to believe that Plaintiff has no chance of recovering against SCSBIT.

As for United's contention that joinder is fraudulent because Plaintiff's claim against SCSBIT is not "ripe," since Plaintiff could first sue United and win and then take the judgment and get SCSBIT to pay the self-insured retention amount on the additional six claims, this fundamentally

misconceives several fundamental concepts of litigation and civil procedure. As a simple matter of efficiency and judicial economy, the parties should be joined to the same action where, as here, the core issue(s) of liability are the same for both parties. Fed. R. Civ. P. 20 governs when parties may be joined to an action, and "should be construed in light of its purpose, which 'is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). United's proposal that Plaintiff not be allowed to join SCSBIT to the present action would have precisely the opposite effect, encouraging multiple lawsuits, delays, and forcing attorneys, judges, and other actors in the legal system to direct more of their time and energy toward the final resolution of this matter.

The cases cited to the court by United in support of its assertion that claims are not "ripe" to be adjudicated if they are contingent upon future events which may not occur are wholly inapposite to the issue of whether joinder of SCSBIT was inappropriate because Plaintiff's claim against SCSBIT was contingent upon a successful claim against United. That line of cases stands for the principle that the court will not issue a preliminary advisory decision regarding an event which has not yet occurred. But these cases refer to events that take place outside of the legal system, and have never involved a situation where the contingent future event is a legal decision on precisely the same issue facing the party. *See, e.g.*, *Texas v. United States*, 523 U.S. 296 (1998) (holding that Texas could not seek a declaratory judgment on a potential Voting Rights Act violation that had not occurred); *KCCP Trust v. North Kansas City*, 432 F.3d 897 (2005) (holding that cable company could not enjoin municipality from upgrading infrastructure where such an upgrade would require a referendum which had not yet been scheduled).

Accordingly, the court finds that under the liberal pleading standards of fraudulent joinder,

United has fallen far short of meeting its heavy burden of showing that there is "no possibility" that Plaintiff could establish a cause of action against SCSBIT, and therefore joinder was proper.

### B.      *Nominal Party*

United's second grounds for removal to federal court is its claim that SCSBIT was joined as merely a nominal party "that is neither necessary nor indispensable to this action since Plaintiff alleges that the coverage involves a determination of coverage limits and number of Self-Insured Retentions ("SIR") payable under . . . [the policy]."  (Def.'s Notice of Removal at 3.)

It is well-established that a party cannot defeat federal diversity jurisdiction by joining a party which has no real stake in the outcome of the case.  Therefore, diversity for the purposes of conferring federal jurisdiction "is determined not by reference to the formal or nominal parties but, rather, there must be complete diversity between the real and substantial parties in interest." *Roche v. Lincoln Property Co.*, 373 F.3d 610, 615 (4th Cir. 2004). *See also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").  The test to determine whether a party is nominal or not is similar to the test for fraudulent joinder.  "A defendant is nominal if there is no arguably reasonable basis for predicting that state law might impose liability on the [resident] defendant under the facts alleged.  There need only be a possibility that a right to relief exists to avoid that conclusion." *Workman v. National Supaflu Systems, Inc.*, 676 F.Supp. 690, 693 (D.S.C. 1987). *See also Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (holding that for purposes of determining whether a party is nominal, "[i]t is enough that the claims be real").

United asserts that SCSBIT is a nominal party to this action, and has no real interest in the outcome, because "Plaintiff alleges that the coverage involves a determination of coverage limits

and number of Self-Insured Retentions ("SIR") payable under . . . [the policy]." (Def.'s Notice of Removal at 3.) However, United fails to adequately explain how SCSBIT does not have a substantial interest in the "determination of coverage limits and number of Self-Insured Retentions." The outcome of such a determination seems to be the principal point of contention between SCSBIT and Plaintiff, and SCSBIT is at risk of paying $900,000 if the "number of Self-Insured Retentions" is determined to be seven rather than one. This is clear not only from the Plaintiff's pleadings, but from SCSBIT's as well. (Pl.'s Mot. to Remand at 5-6;) (SCSBIT's Answer ¶¶ 35-36.) It is puzzling, then, that United asserts that SCSBIT is a nominal party whose citizenship should not be recognized by the court for purposes of determining diversity jurisdiction because "the overwhelming evidence here indicates that there is <u>no possibility</u> relief can be granted in favor of the School District." (Def.'s Resp. at 9) (emphasis in original.) Based on all information in the pleadings, there certainly seems to be a reasonable possibility that SCSBIT could be liable to Plaintiff, which makes SCSBIT a very real party in interest to the case.

Accordingly, the court finds that SCSBIT is not merely a formal or nominal party to the action, and SCSBIT's South Carolina citizenship will not be discarded by the court for the purposes of determining whether complete diversity exists among the parties.

### C.    *Realignment of Parties*

In the event that the court finds that SCSBIT was not fraudulently joined or a nominal party to the action, United asserts that SCSBIT should be realigned as a plaintiff in this case, which would make the parties completely diverse. (Def.'s Notice of Removal at 3.)

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *City of Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 69 (1941). Whether parties are truly diverse must be determined by the courts based

on "the principal purpose of the suit." *Id*. (citation omitted). The Fourth Circuit has held:

> Application of the principal purpose test entails two steps. First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue. If the alignment differs from that in the complaint, the court must determine whether complete diversity continues to exist.

*U.S. Fid. & Guar. Co. v. A&S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995). *See also Gressette v. Sunset Grille, Inc.*, 447 F. Supp. 2d 533, 536 (D.S.C. 2006) (following the two-step principal purpose test as articulated by the Fourth Circuit in *A&S*).

Both Plaintiff and United acknowledge that the primary issue in the controversy is the determination of whether or not the settlements constitute one claim or seven claims for the purposes of insurance coverage. (Pl.'s Mot. to Remand at 6;) (Def.'s Resp. at 10.) The task before the court, therefore, is to determine the interest of the three parties with respect to that primary issue and ensure that they are aligned accordingly. It is undisputed that United has a substantial interest in seeing the settlements recognized as a single claim, while Plaintiff has a substantial interest in seeing the settlements recognized as seven separate claims.

SCSBIT is in some respects caught in the middle in this case, since it serves as both an insurance provider on the self-insured retention payments, and a policyholder on behalf of all of its member school districts, including Plaintiff. United asserts that SCSBIT is primarily a policyholder in this action, and that any issues of SCSBIT's liability to Plaintiff are "ancillary" or "hypothetical" issues that cannot be determined until after the resolution of the main issue of United's liability to Plaintiff. (Def.'s Resp. at 11.)

The guiding principal of the court's determination of whether realignment of parties is proper or not is practicality. *A&S Mfg. Co.*, 48 F.3d at 134 ("Practicalities undergird the district court's reasoning."). In *A&S Manufacturing*, the Fourth Circuit upheld the district court's decision to align

all of the insurers on one side and the insured on the other, because the primary issue in the case was the issue of liability. *Id.* The various insurers had numerous possible disputes among themselves regarding contribution, but the district court properly held that this was a secondary issue that should not lead to realignment of the parties. *Id.*

Based on the totality of the record, there does not seem to be any point of disagreement on any material issue between United and SCSBIT. Both have acknowledged: (1) that they each have an insurance agreement with Plaintiff; (2) that they are responsible for paying Plaintiff on sexual abuse claims; (3) that in the event of a sexual abuse claim, SCSBIT is responsible for paying Plaintiff $150,000, and United is responsible for paying Plaintiff $500,000.

On the main issue of whether the settlements constitute one claim or seven claims, the court need only look at SCSBIT's own pleadings to determine what its interest in the outcome is. In its Answer to the Plaintiff's Complaint, SCSBIT explicitly states, "Defendants allege that it is required to pay only the Self-Insured Retention amount payable under the terms of the Policy up to $150,000; that only one Self-Insured Retention is payable on the claim(s) involved in the underlying litigation . . ." (SCSBIT's Answer at ¶ 35.) Later in the Answer, SCSBIT also states:

> Plaintiff has demanded sums in excess of the limits of coverage provided under the insurance program administered by SCSBIT PC and is not entitled to payments in excess of one Self-Insured Retention amount and the applicable excess limits of the Policy under the Sexual Abuse Endorsement for a single claim.

*Id.* at ¶ 36. This, viewed in concert with the rest of the record in the case, clearly demonstrates that there is no issue of dispute between SCSBIT and United, and both Defendants have a substantial interest in determining that the settlements constitute a single claim and not seven distinct claims.

Accordingly, the court finds that the parties are properly aligned, and denies United's motion to realign SCSBIT as a plaintiff in the case.

The court has determined that SCSBIT: (1) was not fraudulently joined; (2) is not merely a

formal or nominal party; and (3) should not be realigned as a plaintiff. This means that the Plaintiff, Beaufort County School District, and one of the Defendants, South Carolina School Boards Insurance Trust, are both citizens of South Carolina. As a result, there is not complete diversity between the parties in this case, and this court does not have jurisdiction over this matter under 28 U.S.C. § 1332. For the foregoing reasons, Plaintiff's Motion to Remand the matter to state court under 28 U.S.C. § 1447(c) is granted.[2]

## II.     Award of Attorneys' Fees and Costs

Plaintiff argues that United's removal of the case to the court was so frivolous and unsupported by law that United should be responsible for reimbursing Plaintiff for all attorneys' fees and costs incurred in opposing removal. (Pl.'s Mot. to Remand at 8.) "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Whether or not to award attorney's fees under this section is left to the sound discretion of the court. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) ("The word 'may' clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion.") (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). There is a presumption neither in favor of nor against the awarding of attorney's fees under 1447(c). *Martin*, 546 U.S. at 136. "[T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141. *See also In re Lowe*, 102 F.3d 731, 733 (4th Cir. 1996) (holding that

---

[2] Since the court has determined that complete diversity is lacking in this case, and therefore remand is proper, it need not, and does not, address Plaintiff's alternative argument that it is an arm of the state immunized from diversity jurisdiction by sovereign immunity.

awarding of attorneys' fees and costs was appropriate under § 1447(c) where "'a cursory examination . . . would have revealed' a lack of federal jurisdiction.") (citation omitted); *Clipper Air Cargo, Inc. v. Aviation Products Intern., Inc*., 981 F. Supp. 956, 960 (D.S.C. 1997) (holding that awarding of attorneys' fees and costs is appropriate under § 1447(c) where removal is "frivolous").

The question before the court, then, is whether United's grounds for removal were "objectively reasonable." United asserted that SCSBIT was: (1) fraudulently joined; (2) only a nominal or formal party; and (3) actually a plaintiff in the case. For the reasons discussed above, it is clear to the court from the entirety of the record that SCSBIT has $900,000 at stake in this litigation, and its possible liability to Plaintiff for that amount turns on precisely the same question as United's liability towards Plaintiff. A cursory glance at the record shows that SCSBIT is a proper defendant to this action, and United has asserted no reasonable or legally recognized grounds for finding otherwise. Accordingly, the court finds that United has asserted no "objectively reasonable" grounds for removing the case to federal courts, and is therefore liable to Plaintiff for all attorneys' fees and costs resulting from Plaintiff's opposition to the Notice of Removal.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Beaufort County School District's Motion for Remand is hereby **GRANTED**.  It is further **ORDERED** that Beaufort County School District's Motion for Attorney's Fees is **GRANTED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 28, 2007**